## HENNESY v. KELLY.

(Supreme Court, Appellate Division, Fourth Department.   November 20, 1900.)

PHYSICIANS—WITNESSES—PRIVILEGED COMMUNICATIONS—WAIVER.

> Code Civ. Proc. § 834, forbids a physician from disclosing any informa-
> tion received from a patient.  Section 836 makes section 834 applicable to
> examination of a physician as a witness, unless the patient expressly
> waives an objection thereto in open court.  In an action for medical serv-
> ices, where malpractice was relied on as a defense, the defendant testi-
> fied as to his condition, and introduced several physicians, who had exam-
> ined him at different times.  Held, that it was error to allow a physician,
> as witness for the plaintiff, to testify, against defendant's objection, as
> to confidential communications made to him by defendant, when called
> in a professional capacity, the defendant not having offered other testi-
> mony relative to the visit of such witness.

Appeal from Oneida county court.

Action by Margaret E. Hennesy against Patrick L. Kelly.   From a
judgment in favor of the plaintiff, and from an order denying mo-
tion for a new trial (64 N. Y. Supp. 562), defendant appeals.   Re-
versed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WIL-
LIAMS, and LAUGHLIN, JJ.

Henry F. Coupe, for appellant.
Grant & Wager, for respondent.

WILLIAMS, J.   The judgment and order appealed from should be
reversed, and a new trial granted, with costs to the appellant to
abide event.   The action was brought to recover for medical serv-
ices rendered by the plaintiff for the defendant.   The defense was
malpractice.   The court erred in allowing Dr. Hamilton S. Quinn, a
person duly authorized to practice physic and surgery, to disclose
information which he acquired in attending the defendant, as a pa-
tient, in a professional capacity, and which was necessary to enable
him to act in that capacity, contrary to the provision of section 834
of the Code of Civil Procedure.   The plaintiff was a female physi-
cian, and was called to attend defendant in February, 1898.   She
diagnosed his disease at first as grippe, and then, after a few days
or a week, she pronounced it to be malaria.   She continued to treat
defendant for malaria until March 25, 1898, he growing constantly
worse.   And then another physician (Dr. Kilborn) was called in.
He made an examination, and discovered defendant was suffering
from inflammation of the bladder, caused by a stricture.   Dr. Kil-
born, assisted by Dr. Kinloch, performed an operation, removed the
stricture, and within a few days thereafter opened an abscess, and
removed about a pint of pus, the accumulation of which arose from
an obstruction from the urethra to the bladder, caused by the stric-
ture.   The defendant thereupon recovered without the aid of any
medicines whatever.   Before Dr. Kilborn was called, Drs. Brown
and Quinn had called upon defendant, each making one visit.   Up-
on the trial, evidence was given on behalf of defendant as to his
condition during his whole sickness by himself, his wife, his nurse,
and Drs. Kilborn and Kinloch.   The defendant himself testified as

to what took place when Dr. Brown visited him, but no evidence whatever was given by defendant or in his behalf as to what took place on the occasion of Dr. Quinn's visit and examination. The plaintiff testified in her own behalf as to the defendant's condition while she attended him. She then called Dr. Brown, and gave evidence as to his visit and examination. She then called Dr. Quinn. No one was present at his visit and examination. The doctor and patient were alone together. The defendant had not testified as to anything which occurred on this occasion. Under defendant's objection and exception, Dr. Quinn was permitted to testify, among other things, as follows:

"He (defendant) was pale, skin moist; there was a tender spot, and the skin was somewhat red, in forward between the thighs; weakness and exhaustion. I made a regular examination, found a soreness in between the thighs, extending between the thighs, and around forward towards the penis. I found the swelling between the thighs was tender, reddened, and for the most part hard. I extended the examination, and considered he had a stricture at the time. I asked him if he had had a stricture. He answered that he had had one. I asked him when. He said several years before. Can't say how many years. I asked him if he had been operated on. I think he said his water had been drawn, and he recovered. I asked him if he had the stricture cut or dilated. I understood that he had never had it done. I asked him questions as to what caused it, and as a physician I don't feel at liberty to give his reply. He said that he had not informed the plaintiff as to his condition. I asked him if he told her about the stricture, or about the swelling. He replied that he had not. He said he did not tell the plaintiff about it because he did not want to speak about it to a lady. The usual cause of stricture is gonorrhea, commonly known as clap. A direct injury might cause it. Ureteritis might cause it. He did not tell me about any injury he had received."

This evidence certainly came within the prohibition of section 834 of the Code, and was improperly received and considered by the jury, unless the provisions of that section were expressly waived by the defendant, the patient, under section 836 of the Code. There was no express waiver on the trial, but, on the contrary, the defendant persistently objected to the evidence. It is claimed, however, that such waiver was made on the trial by defendant's giving his own testimony and that of his several witnesses as to his physical condition during his whole sickness, although he gave no evidence whatever as to the occasion testified to by Dr. Quinn. This view seems to have been taken by the county judge in denying the motion to set aside the verdict and for a new trial. The law of this state is to the contrary, however. Hope v. Railroad Co., 40 Hun, 438; Id., 110 N. Y. 643, 17 N. E. 873; Record v. Village of Saratoga Springs, 46 Hun, 448; Id., 120 N. Y. 646, 24 N. E. 1102; Barker v. Steamship Co., 91 Hun, 499, 36 N. Y. Supp. 256; Id., 157 N. Y. 693, 51 N. E. 1089; Morris v. Railway Co., 148 N. Y. 88, 42 N. E. 410. In the Hope Case the plaintiff had had three physicians, each at a different time from the other. She called one of them, and he gave testimony as to the extent and character of her injuries. The defendant called the other two, and their evidence was excluded under plaintiff's objection, based upon sections 834, 836, Code Civ. Proc. The defendant urged that when the plaintiff waived her rights with respect to one physician she opened the case to the others, but the court held the statute did not permit such

construction. The court of appeals affirmed this decision, two judges dissenting, and one other not sitting. In the Record Case the plaintiff had two physicians, Drs. Hall and Grant. She called Dr. Hall, and he testified as to her physical condition. Upon the cross-examination of Dr. Hall defendant drew out the fact that he and Dr. Grant at one time visited the plaintiff together, and had him state plaintiff's condition on that occasion, and what took place when both doctors were present. The defendant then called Dr. Grant, and sought to examine him as to plaintiff's condition at the time he and Dr. Hall made the visit together, and what took place there. This evidence was excluded by the court, under plaintiff's objection, based upon sections 834, 836, of the Code. The defendant contended that plaintiff, by giving her own evidence and that of Dr. Hall as to her condition, expressly waived the privilege as to Dr. Grant. The court held that, while she did consent to her own and Dr. Hall's disclosure of her condition, she did not thereby consent to Dr. Grant's disclosure; and that it could not be said that she waived her privilege as to Dr. Grant by the defendant's examination of Dr. Hall with reference to the occasion when Dr. Grant was present. The court of appeals affirmed this decision unanimously, one judge not sitting. In the Barker Case the plaintiff had several physicians, and appears to have called all but one of them, and to have given evidence by them as well as by himself as to his condition all the time from the accident until the trial. The defendant called the other physician, and offered to prove by him plaintiff's condition and statements made by him in regard to the previous condition of his health. This evidence was excluded by the court under objection by the plaintiff, based upon sections 834, 836, Code Civ. Proc. The court held that plaintiff's privilege was not waived by his having called other physicians to testify to his condition anterior and subsequent to the time the witness attended him. The court of appeals affirmed this decision unanimously, one judge not sitting. The Record Case was passed upon by the court of appeals later than the Morris Case, but in the Morris Case there was an opinion, and it may be well to note what was held in the case and some things that were said in the opinion. In that case the plaintiff was attended by two physicians at the same time, for the purpose of examining her, and ascertaining the extent and nature of her injuries received in the accident. The plaintiff on the trial called one of the physicians, who gave important testimony with reference to her condition. The defendant then called the other physician, and sought to examine him with reference to the same transaction and examination, and was met with plaintiff's objection, based upon sections 834, 836, Code Civ. Proc. The court excluded the evidence. The general term affirmed, and the court of appeals reversed unanimously, holding that the plaintiff, by calling one of the physicians, and giving his evidence, waived the privilege as to the other physician present at the same time. In the course of his opinion, Judge O'Brien said:

"In this case it was the privilege of the plaintiff to insist that both physicians should remain silent as to all information they obtained at the consulta-

tion, but she waived this privilege when she called Dr. Payne as a witness, and required him to disclose it. The plaintiff could not sever her privilege and waive it in part and retain it in part. If she waived it at all, it then ceased to exist, not partially but entirely. The testimony of Dr. Payne having been given in her behalf, every reason for excluding that of his associate ceased. The whole question turns upon the legal consequences of the plaintiff's act in calling one of the physicians as a witness. She then completely uncovered and made public what before was private and confidential. It amounted to a consent on her part that all who were present at the interview might speak freely as to what took place. * * * The statute does not attempt to define what shall in any case constitute a waiver. That is left to be determined by the courts with reference to the facts of every case, upon general principles of reason and justice. * * * We think that a construction of the statute which permits a patient who has been attended by two physicians at the same examination or consultation to call one of them as a witness to prove what took place or what he learned, thus making public the whole interview, and still retain the right to object to the other, is unreasonable and unjust, and should not be followed. The waiver is complete as to that consultation when one of them is used as a witness."

In this opinion the Hope and Record Cases were considered. They were not regarded as conflicting with the decision in the Morris Case. When later the Barker Case was before the court of appeals, the Hope and Record Cases were followed, the Morris Case not being regarded as in conflict therewith.

This casual review of the cases in this state leaves no doubt as to the law applicable to the question under consideration. Dr. Brown's evidence was admissible, because the defendant had given evidence as to the occasion when he was present, and as to which he testified. He had waived his privilege as to that occasion. Dr. Quinn's evidence was not admissible, because no evidence with reference to the occasion when he was present had been given by the defendant. He had not in any way waived his privilege as to that occasion. It will not do to say that this error in the admission of Dr. Quinn's evidence could have worked no injury to the defendant, and should not, therefore, cause a reversal of the judgment. In view of the peculiar nature of some parts of Dr. Quinn's examination, and in view of the result of the trial,—a verdict for the plaintiff in face of the fact that the plaintiff was treating defendant for grippe and malaria when his real difficulty was stricture, and its effects upon his general system,—we do not feel that we ought to conclude that this evidence, improperly admitted, produced no injurious effect upon the jury.

The judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide event. All concur.